Approved: __Adam_____
ADAM FEE / MICHAEL D. LOCKARD
Assistant U.S. Attorney

Before: HON. DEBRA FREEMAN
United States Magistrate Judge
Southern District of New York

JUL 23 2014

**14 MAG 1641**

**DOC # 1**

- - - - - - - - - - - - - - - - x
                                 :
UNITED STATES OF AMERICA         :   **SEALED COMPLAINT**
                                 :
        - v. -                   :   Violation of 18 U.S.C
                                 :   § 1956(h)
HALIM CRISTO-FARES, and          :
SEAN McCABE,                     :   COUNTY OF OFFENSE:
                                 :   New York
        Defendant.               :
                                 :
- - - - - - - - - - - - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss.:

KEVIN J. CORCORAN, being duly sworn, deposes and says that he is a Special Agent with the Drug Enforcement Administration ("DEA"), and charges as follows:

**COUNT ONE**

1.   In or about 2014, in the Southern District of New York and elsewhere, HALIM CRISTO-FARES and SEAN McCABE, the defendants, and others known and unknown, unlawfully, intentionally and knowingly did combine, conspire, confederate and agree together and with each other to violate Title 18, United States Code, Sections 1956(a)(3)(A) and 1956(a)(3)(B).

2.   It was a part and an object of the conspiracy that HALIM CRISTO-FARES and SEAN McCABE, the defendants, and others known and unknown, in an offense involving and affecting interstate and foreign commerce, unlawfully, willfully, and knowingly, would and did conduct and attempt to conduct a financial transaction involving property represented by a person at the direction of, and with the approval of, a Federal official authorized to investigate and prosecute violations of Section 1956 of Title 18, United States Code, to be the proceeds of specified unlawful activity, to wit, the importation and distribution of a controlled subsance, with the intent to promote the carrying on of said specified unlawful activity, in violation of Title 18, United States Code, Section

1956(a)(3)(A).

       3.    It was further a part and an object of the conspiracy that HALIM CRISTO-FARES and SEAN McCABE, the defendants, and others known and unknown, in an offense involving and affecting interstate and foreign commerce, unlawfully, willfully, and knowingly, would and did conduct and attempt to conduct a financial transaction involving property represented by a person at the direction of, and with the approval of, a Federal official authorized to investigate and prosecute violations of Section 1956 of Title 18, United States Code, to be the proceeds of specified unlawful activity, to wit, narcotics trafficking, with the intent to conceal and disguise the nature, location, source, ownership, and control of property believed to be the proceeds of said specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(3)(B).

## Overt Acts

       4.    In furtherance of the conspiracy and to effect the illegal objects thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

       a.    On or about May 1, 2014, HALIM CRISTO-FARES, the defendant, while in New York, New York, met with a confidential source ("CS-1") to discuss a money laundering transaction involving the proceeds of the sale of narcotics.

       b.    On or about May 14, 2014, CRISTO-FARES during a telephone call with CS-1, told CS-1 to deliver the narcotics proceeds to an individual later identified as SEAN McCABE, the defendant.

       c.    On or about May 16, 2014, McCABE met with CS-1 to discuss a money laundering transaction involving the transportation of narcotics trafficking proceeds from the United States to Panama.

       d.    On or about June 5, 2014, McCABE picked up approximately $200,000 from CS-1 in connection with a money laundering transaction.

       e.    On or about June 6, 2014, McCABE delivered approximately $160,000 to undercover law enforcement officers in

Panama.

(Title 18, United States Code, Section 1956(h).)

## PROBABLE CAUSE

The bases for my knowledge and for the foregoing charge are, in part, as follows:

5.  I have been a DEA Special Agent for approximately 11 years. During that time, I have participated in numerous investigations of unlawful drug distribution within the United States and internationally. I have also participated in numerous investigations of money laundering related to, among other things, the illicit transfer of narcotics proceeds. Through my training, education, and experience, I have become familiar with the manner in which illegal drugs are imported and distributed; and the methods and means by which individuals involved in drug distribution offenses fund their drug trafficking activities, and transfer, distribute, and launder the proceeds of their drug trafficking activities.

6.  I make this Affidavit based on my participation in the investigation and conversations with cooperating witnesses, including other law enforcement, including law enforcement personnel with the DEA, and foreign law enforcement personnel involved in this investigation.

7.  Furthermore, because this Affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned in the course of this investigation. In addition, throughout this Affidavit, where I discuss statements made by the defendants and others, I have included the substance of such statements, and not the exact words used. In preparing this Affidavit, where applicable, I have relied upon draft English translations prepared by DEA linguists, of recorded conversations involving the defendants that were conducted in languages other than English.

8.  From speaking with CS-1[1] and other DEA agents involved in this investigation, and from reviewing audio and video recordings of certain of the meetings discussed herein, I

---

[1] CS-1 previously has provided reliable and truthful information to the Government for several years, which information has been corroborated by independent law enforcement investigation.

3

have learned the following during the course of this investigation:

      a.    On or about March 13 and March 24, 2014, CS-1 met with HALIM CRISTO-FARES, the defendant, at a location outside the United States. The meetings were audio-recorded. During the meetings:

      i.    CS-1 asked CRISTO-FARES for help in moving the proceeds of narcotics transactions from the United States to Central America. CS-1 explained that CS-1 works with an international drug trafficking organization (the "Organization"), and that CS-1 is one of the Organization's couriers with responsibility for moving cocaine from South America to the United States and Europe.

      ii.    CRISTO-FARES agreed to assist CS-1 in exchange for a percentage of the laundered proceeds as payment to CRISTO-FARES.

      iii.    CRISTO-FARES stated, in sum and substance, that there was a cost for laundering the narcotics proceeds because the money transfer had to be justified.

      iv.    CRISTO-FARES discussed being able to launder up to $2.5 million at one time, and that he (CRISTO-FARES) could meet in New York or Miami to further discuss the money laundering transaction.

      b.    On or about May 1, 2014, CS-1 met with CRISTO-FARES in New York, New York, along with a second confidential source ("CS-2"[2]), who purported to also work for the organization. The meeting was audio and video-recorded. During the meeting:

      i.    CS-1 and CS-2 (referred to collectively as the "CSs") discussed with CRISTO-FARES the Organization's drug-trafficking activities in South America and the United States. When asked by CS-2 if he (CRISTO-FARES) was aware of the type of operation in which CS-2 is involved, CRISTO-FARES confirmed that he was.

---

[2] CS-2 previously has provided reliable and truthful information to the Government for several years, which information has been corroborated by independent law enforcement investigation.

          ii.    When CS-2 told CRISTO-FARES that he/she wanted to meet with CRISTO-FARES to make sure everything would be safe with respect to the money laundering transaction, CRISTO-FARES stated that he (CRISTO-FARES) would not accept the Organization's money if he could not guarantee the delivery of the money.

          iii.    The CSs explained that they needed to move drug proceeds from the United States to Panama and Europe. CS-2 stated that he/she needed liquid funds in Panama in order to continue running the CSs operations, and the rest of the money should be sent to Europe.

          iv.    CRISTO-FARES stated that he will consult with his associates about moving cash to Panama, and that he can transfer money to Europe through banks in Panama.

          v.    The CSs and CRISTO-FARES discussed the method of transferring money to Europe. CRISTO-FARES stated that he would need a company to deposit the money into Panamanian banks because personal accounts would not work. CS-2 stated that CS-2 could open a business corporation in Panama.

          vi.    CS-2 explained that the Organization needed to move $5 million, with $3 million going to Panama and $2 million going to accounts in Europe. CRISTO-FARES confirmed he can help for a fee equal to a percentage of the laundered money.

          vii.    CRISTO-FARES told the CSs there would be no risks, and that his (CRISTO-FARES's) office would be responsible in case something was lost during the transfer.

          viii.    CS-2 stated that CS-2 would first ask CRISTO-FARES to transfer only $250,000 in order to test CRISTO-FARES's operation, and that, if all goes well, CS-2 would ask CRISTO-FARES to move larger amounts of money.

          c.    During a telephone call between CS-1 and CRISTO-FARES on or about May 14, 2014, which was audio-recorded, CRISTO-FARES stated that CS-1 should deliver the money to be laundered to a man in Florida later identified as SEAN McCABE, the defendant. CRISTO-FARES told CS-1 that they would be in contact with CS-1 to arrange the delivery.

          d.    On or about May 16, 2014, CS-1 met with McCABE at a location in Florida. The meeting was audio and

5

video-recorded. During the meeting:

        i. McCABE stated that he would transport the money, and that CS-1 needed to negotiate the percentage with CRISTO-FARES.

        ii. CS-1 told McCABE that a cocaine shipment had been sold in Chicago, and that CS-1 would collect the proceeds in Chicago and then transfer the money to McCABE for transport to Panama. McCABE stated he would transport the money to Panama on a commercial flight.

        iii. McCABE stated that, in order to transport larger amounts of money from the United States, McCABE could charter a private airplane to fly directly to Panama.

        iv. McCABE and CS-1 confirmed the details of the money transfer.

        v. McCABE stated that he used to transport cocaine and that he wanted to start working in the drug business again.

        e. On or about May 29, 2014, during telephone call between CRISTO-FARES and CS-1, CRISTO-FARES and CS-1 discussed the details of CS-1's planned delivery of narcotics proceeds to McCABE for further transport on to Panama.

        f. On or about June 5, 2014, at a location in Florida, CS-1 delivered to McCABE approximately $200,000 in cash.

        g. On or about June 6, 2014, in Panama, McCABE delivered approximately $160,000 in cash to undercover law enforcement officers. This meeting was surveilled. I have reviewed photographs taken during this surveillance, and have identified the individual seen delivering the cash in Panama as McCABE.

        h. On or about July 9, 2014, McCABE met with CS-1 and stated that McCABE, CRISTO-FARES, and another co-conspirator not named in this indictment ("CC-1") split the profits from the first money laundering transaction, with McCABE and CRISTO-FARES receiving $15,000 each, and CC-1 receiving $10,000.

6

WHEREFORE, I respectfully request that HALIM CRISTO-FARES and SEAN McCABE, the defendants, be arrested, and imprisoned or bailed, as the case may be.

KEVIN J. CORCORAN
Special Agent
Drug Enforcement Administration

Sworn to before me this
28th day of July, 2014

HON. DEBRA FREEMAN
United States Magistrate Judge
Southern District of New York

7